## SUPREME COURT.

## CAROLINE L. GRISWOLD, by her next friend, &c., agt. DAVID D. GRISWOLD and REUBEN J. BLANCHARD.

On a motion by one partner to set aside a judgment, on the ground of *collusion* between the plaintiff and the other partner, entered in form against the firm, in precise conformity to the statute—that is, by service of process on one only, without any appearance by the defendant not served,

*Held*, that the rule upon the question of collusion generally is well stated by Judge MITCHELL in *Everson* agt. *Gehrman*, (10 *How.* 301,) that the court should not sanction any act which would encourage concealment and contrivance between partners, who owe each other confidence and good faith. If the partners cannot agree, it is best to allow all the creditors to come in equally; or the most diligent, in the fair and regular practice of the law, to succeed.

In this case it was *held*, that the proof of collusion was not complete, being affirmed on the one side, and in a manner denied upon the other. But the whole circumstances of the transaction tended to show the existence of an undisclosed agreement on the part of the family of the plaintiff, having in view the giving of a preference to the plaintiff. If the moving defendant should succeed, in case he had an opportunity to go to trial, in defeating the plaintiff's claim, then that understanding would at once be shown to be collusive.

It appeared, on behalf of the moving defendant, on the merits, that the plaintiff's debt was not a partnership debt, but was for money advanced to his partner, as a part of the capital which the latter was, by the articles of the co-partnership, to put into the firm. If this fact was established, it would seem to furnish a perfect defence to the action, so far as the moving defendant was concerned; and there being a partial but not a satisfactory denial of such allegations, the moving defendant was let in to defend the action.

This was not a case (if it could be allowed in any case under the Code) for turning the moving defendant out of court at one door, for the purpose of having him come in at another, with a bill in equity in his hands, ready to file, for the relief he sought,

*New-York Special Term, March,* 1857.

MOTION to set aside judgment and execution.

The defendants were partners, under the firm-name of Griswold & Blanchard. The plaintiff had advanced moneys, as is alleged, by defendant Blanchard, to the defendant David D. Griswold, who is her nephew and stepson, as a part of his capital in the firm, pursuant to the articles of partnership. On the part of the plaintiff, it is alleged that this money was advanced on the joint liability of both defendants. On the 5th of January last, a copy of the summons and complaint, in this case, were served on defendant Griswold; but none was ever served on Blanchard. Griswold, the defendant, left town on the 6th of January, as he states, for his health, and was absent until the 23d of January. During his absence, it sufficiently appears, that his father, Daniel S. Griswold, the husband of the plaintiff, acted in his stead in managing the financial affairs of the firm. Blanchard never knew of the existence of the suit till a levy was made under the execution; and he states, in his affidavit, that he believes he was designedly kept in ignorance that such a suit was pending with intent to defraud him. He says he was constantly in the city, and that he saw David. D. Griswold and his father almost daily, but had no knowledge that such a suit was pending. David D. Griswold swears he has only seen Blanchard once since the service of the summons and complaint, and then only for a shot time. Daniel S. Griswold makes an affidavit in opposition to this motion, but does not deny that he was, during his son's absence, and during the time when the defendants could have answered in this action, in the habit of meeting Blanchard frequently; nor does he, or his son, or the plaintiff, deny that the pendency of the action was kept from the knowledge of Blanchard. But David D. Griswold denies that there has been any collusion between himself and the plaintiff in any way.

CHAS. W. SANDFORD, *for defendant Blanchard.*
THEODORE SEDGWICK, *for plaintiff.*

Griswold, &c., agt. Griswold & Blanchard.

BIRDSEYE, Justice. This case differs from that of *Everson* agt. *Gehrman*, (10 *How*. 301,) and most, or all of those there referred to. There has been no unauthorized appearance by an attorney for the defendant not served. There was no offer by one of the defendants, on which judgment was entered against both. But the proceedings have been in precise conformity with the provisions of the statute.

The decision of the motion must therefore depend on the question, whether there has been collusion, and whether the moving party has merits.

Upon the question of collusion, the rule is well stated in *Everson* agt. *Gehrman*, (*ubi supra*,) that the court should not sanction any act which would encourage concealment and contrivance between partners, who owe each other confidence and good faith. If the partners cannot agree, it is best to allow all the creditors to come in equally ; or the most diligent, in the fair and regular practice of the law, to succeed.

In the present case, there are a father, mother and son, who act together. Their acts are precisely such as they would have been, if a previous arrangement had been made for the purpose of giving to the plaintiff the precise preference which she has in fact obtained. It is certainly difficult to believe it was not mutually understood between them, that what has been done should be done, and with exactly the result that has followed. True, the son says there has been no *collusion* between himself and the plaintiff. The definition of collusion is, a secret agreement for a fraudulent purpose. If one partner is allowed to decide, beyond the possibility of review, that the purpose of the arrangement he is making is not fraudulent, because the debt is justly due from the firm, he can perhaps swear, ingenuously, that there has been no *collusion*. But if the fact be established that the debt is not the just debt of the firm, the secret arrangement would instantly become in judgment of law, *collusive*. There is here no denial of the secret arrangement; but the denial rather amounts to a negation of any fraudulent purpose in making that arrangement. The case differs much from that of *Denton* agt. *Noyes*, (6 *J. R.* 296,) where the plaintiff's

attorney had delayed the issuing of the *capias* to commence the suit, for some months, on the agreement of an attorney to appear and put in bail for the party.

I do not mean to say that the proof of collusion is complete in the present case. It is affirmed on the one side, and, in a manner, denied upon the other. But the whole circumstances of the transaction tend to show the existence of an undisclosed agreement on the part of the family of Griswolds, having in view the giving of a preference to the plaintiff. If defendant Blanchard should succeed, in case he has an opportunity to go to trial, in defeating the plaintiff's claim, then that understanding would at once be shown to be collusive, fraudulent and void. Has Blanchard, then, any merits?

He swears the plaintiff's debt is not a partnership debt, but was for money advanced to the younger Griswold, as a part of the capital which he was, by the articles of the copartnership, to put into the firm. If this fact is established, it seems to furnish a perfect defence to the action, so far as Blanchard is concerned.

The denial of defendant Griswold is, at least, cautious and peculiar. He says, all the money, for which this action was brought, was received *by him* from the plaintiff for the purposes of the partnership, was used by said partnership in the business thereof, and to pay partnership liabilities, and is justly due and owing to the plaintiff by the partnership. I do not see any necessary inconsistency or contradiction between Blanchard's allegation and these of his copartner, except possibly the last one, that the money is owing by the copartnership. And that averment states nothing as to what the original transaction was, or how the credit was at first given.

Daniel S. Griswold states, in his affidavit, that he has acted as general managing agent for his wife, the plaintiff, in all her affairs and transactions with the defendants; and that, as such agent, he advanced *to said David D. Griswold,* for the *purpose* of enabling the said Griswold & Blanchard *to begin and carry on* their business, the money for which this action is brought. Here the advance is stated to have been made to his son, and

for the purpose of enabling the firm to *begin* business. The allegation, instead of contradicting, supports Blanchard's account. It is true, that Mr. Griswold, senior, states that, in a conversation which he had with Blanchard,—more than six months after the formation of the firm, however,—Blanchard admitted and agreed that those advances were made in and for the business, and on the joint responsibility of the firm. But it is clear, from the moving affidavit, that Blanchard denies this. And Mr. Griswold says himself that he had that conversation, because he was desirous of avoiding misapprehension, particularly as to all the advances to be made after that time. But there is no statement of the amount which has since been advanced on the faith of that agreement. It may be more, it may be less. If the arrangement was exactly as Mr. Griswold states, it would probably be good as to all future advances. But if David D. Griswold was then alone liable for the past advances, of what avail to the plaintiff would such a verbal assumption of the debt by Blanchard be?

On the whole, I am fully satisfied that the defendant Blanchard must be let in to defend this action. And it is not necessary to turn him over to the filing of a bill, or the bringing of a new suit, for the purpose of overturning the judgment, on account of the collusion or fraud, like *Waring* agt. *Robinson*, (1 *Hoffman's Rep*. 526.)

If it can ever be required to resort to that practice, since the union of legal and equitable powers in this court, (as to which no opinion need now be expressed,) this is not a case for turning the party out of court at one door, for the purpose of having him come in at another.

Ever since the case of *Denton* agt. *Noyes*, (6 *J. R.* 296,) the power of this court, even as a court of law, to protect the rights of both parties, has been too clear, and has been exercised too often to admit of doubt.

The defendant Blanchard is to be at liberty, within ten days after the service of the summons and complaint on him, to put in his answer and go to trial. But as the proceedings of the

plaintiff are in form regular, the lien of the judgment and execution may stand as security to the plaintiff.

The costs of this motion ($10) to abide the event of the cause.